Cecil E., Jr., and Theo K. INMAN

v.

UNITED STATES.

Cecil E. INMAN, Jr., and Mrs. Anne B. Inman, Sole Heirs at Law and Under the Will of Cecil E. Inman, Sr., Deceased, and Mrs. Anne B. Inman, Surviving Wife

v.

UNITED STATES.

Civ. A. Nos. 3561(J), 3562(J).

United States District Court
S. D. Mississippi.

Sept. 3, 1964.

L. Lamar Beacham, Jackson, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Wesley Watkins, Atty., Dept. of Justice, Washington, D. C., for defendant.

WILLIAM HAROLD COX, Chief Judge.

These consolidated cases seek a recovery of forty-two thousand three hundred sixty-nine dollars eighty-four cents in income taxes back assessed against the plaintiffs for the year 1959. The tax incident arises out of a securities transaction of Southern Bond Company, a partnership composed of Cecil Inman, deceased, and Cecil Inman, Jr. The Southern Bond Company was a securities dealer in Jackson at the time.

On December 10, 1958, the Southern Bond Company entered into a contract with Hyde Construction Company as an investment to purchase from the latter two million one hundred eighty thousand dollars par value revenue bonds of the Jefferson-Cocke County, Tennessee Gas District for eighty dollars fifty cents per hundred. This contract to buy and sell was itself a security within the purview of the law and no part of such bonds were offered for sale prior to the incident presently mentioned. Subsequently, a syndicate of bond dealers was voluntarily organized at the instance of Inman to underwrite the sale and to buy those bonds when issued at ninety dollars a hundred. The Inmans participated in that syndicate by purchasing or underwriting one hundred fifty thousand dollars par value of those bonds. By prearrangement, when those bonds were ready to be executed at a Memphis bank on June 12, 1959, a representative of Hyde Construction Company in Jackson went with Cecil Inman, Jr., of Jackson to Memphis where Rex Carter satisfied himself for Hyde that the syndicate would take those bonds on that day and pay into the account of that public district nine hundred dollars for each of said one thousand dollar bonds, aggregating the par value of two million one hundred eighty thousand dollars. When thus done on that day, Hyde released Southern Bond Company from its said contract to purchase. This release was executed at the request of Inman and solely for his accommodation and without benefit to Hyde. When thus done on that day, Hyde issued Southern Bond Company its two checks for the difference between the price which Southern Bond Company had a right to purchase the bonds and the price at which the syndicate agreed to purchase them, amounting to a profit of nine dollars five cents per hundred on said bonds to said securities dealer. Southern Bond Company then and there released Hyde Construction Company

**160**

from its agreement to sell said bonds to it at said price. Hyde thereupon authorized the bank to deliver said bonds to said syndicate at said price. The bonds were being executed on behalf of the public agency at the Memphis bank when Inman released Hyde from said contract and when the earned profit was paid to Inman. No manual delivery of the bonds was contemplated by anybody because such bonds were retained by the Memphis bank as security for the obligation of the underwriting syndicate, including Southern Bond Company, as purchasers of such bonds. The defendant treated that transaction as an effectual sale of those bonds which Southern Bond Company had not held for six months. The plaintiffs contend that the transaction was entitled to long term capital gain treatment, not as a sale of the revenue bonds, but as an effectual transfer to the obligor under the sales contract itself which the security dealer had held for longer than six months. It is true that Southern Bond Company in this transaction actually re-sold this contract commitment for the bonds and not the bonds themselves, when this dealer released Hyde from the contract to sell it said bonds. The dealer realized its anticipated profit on said transaction without having acquired any title to or possession of said bonds by a delivery thereof. It never incurred any duty or legal obligation to anybody for the delivery of such bonds at any price. But the evidence conclusively shows that the procedure adopted by the dealer was a circuitous device of his own making for the accomplishment of a sale of these bonds at the price and for the profit which it realized thereon. The purchase by and delivery to this syndicate of these bonds was the sine qua non of that which occurred which resulted in the profit enjoyed by Inman. Hyde was a mere conduit through which the profit from such sale flowed to Southern Bond Company. Significantly, the revenue bonds were being executed at the Union Planters' National Bank in Memphis practically all of that day. Such process was going on about the time Hyde delivered its two checks to Inman representing his profit on the transaction when they left Memphis by plane about 3:00 P.M. that afternoon. Carter said that he closed the transaction with Inman and released him on said contract and gave him said checks when he was first perfectly satisfied beyond any doubt that the syndicate was purchasing the bonds and underwriting them at said bank at the same time. This transaction under these circumstances cannot be treated as a sale or exchange of any rights under said contract to sell said bonds to said dealer when issued. In Morris Shanis v. Commissioner of Internal Revenue, 19 T.C. 641, 650, the Court said "where buy and sell contracts of when issued securities are not sold or exchanged prior to their maturity but are retained until the final settlement date and cleared through the stock clearing corporation, in our opinion, there is a sale and exchange of the securities involved on the settlement date and a short term capital transaction follows as a consequence."

It is accordingly the opinion of the Court that Southern Bond Company on June 12, 1959, realized a net profit of $98,598.38 from the sale, not of any rights under this contract itself as a security which it had held for more than six months, but as a profit from the sale at that time of these bonds to that syndicate on that day. This profit shoud be treated as ordinary income. The complaints are without merit. Separate judgments may be presented dismissing the complaints with prejudice at the cost of the plaintiffs in each case.